1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **D.C. Number: CR F 06-0075 AWI** |
| | ) | |
| **Plaintiff-Appellee**, | ) | **[Mag. No. 6:06-MJ-101  WMW]** |
| | ) | |
| **v.** | ) | |
| | ) | **ORDER ON APPEAL OF** |
| **LINH NGUYEN,** | ) | **CONVICTION** |
| | ) | |
| **Defendant-Appellant**. | ) | |
| | ) | |

Linh Nguyen ("Nguyen") appeals his conviction following a bench trial for violations of 36 C.F.R. §§ 4.22(b)(1) and 4.23(a)(1).  The Magistrate Judge denied Nguyen's requests for an acquittal and also overruled objections, both at trial and *in limine*, concerning the sobriety tests administered to Nguyen and Rule of Evidence 702.  Nguyen now appeals the denied acquittal on the § 4.23(a)(1) count and the overruled evidentiary objections.  For the reasons that follow, the conviction will be affirmed.

**SCOPE OF REVIEW**

An appeal from a criminal conviction imposed by a Magistrate Judge lies with a "judge of the district court and must first be brought in the district court before prosecution in the court of appeals."  United States v. Soolook, 987 F.2d 574, 575 (9th Cir. 1993); see also 18 U.S.C. § 3402.  The district court's review of the magistrate's judgment is governed by the same standards as an appeal from a judgment of a district court to the court of appeals.  Fed. R. Crim. P.

58(g)(2)(D); <u>United States v. McFarland</u>, 369 F.Supp.2d 54, 56-57 (D. Me. 2005); <u>United States v. Fautanu</u>, 751 F.Supp. 1420, 1421 (D. Haw. 1990); <u>United States v. Ramirez</u>, 555 F.Supp. 736, 738-739 (E.D. Cal. 1983).  In other words, the district court "is to apply the same scope of review as a United States Circuit Court of Appeals would apply in considering an appeal of a judgment from a United States District Court."  <u>United States v. Charrington</u>, 285 F.Supp.2d 1063, 1066 (S.D. Ohio 2003).

## **BACKGROUND**

On July 6, 2006, Nguyen was arrested in Yosemite National Park on alcohol related charges following a traffic stop.  Nguyen was charged with violating: (1) 36 C.F.R. § 4.23(a)(1), operating a motor vehicle under the influence of alcohol to a degree that rendered him incapable of safely operating the vehicle; (2) 36 C.F.R. § 4.23(a)(2), operating a motor vehicle with a blood alcohol content of 0.08% or greater; (3) 36 C.F.R. 4.22(b)(1), operating a motor vehicle without due care or at a speed that is greater than reasonably prudent; and (4) 36 C.F.R. § 4.21(c), operating a motor vehicle at a speed in excess of the posted speed limit.

Prior to trial, Nguyen filed two motions in limine.  The first motion sought to exclude the results of a portable breathalyzer test that was administered during the traffic stop.  The second motion sought to prevent the government from presenting evidence and interpretation relating to the field sobriety tests administered to Nguyen.  Specifically, the second motion argued that the government needed to show that the Horizontal Gaze Nystagmus field sobriety test met Rule 702/*Daubert* criteria, that all field sobriety tests were accurately administered for the results to be admissible, and although the officer involved could give lay testimony about the One Leg Stand and Walk and Turn field sobriety tests, she should be precluded from using terms such as "pass, fail, standardized clues, or test" since these terms tend suggest that the procedures are scientific, inherently reliable, and accurate.  On March 14, 2007, a hearing was held on the motions in limine.  The Magistrate Judge denied the motions and in part held:

> . . . neither am I granting your motion to keep out the failed sobriety tests.  I think these are all things that the ranger can – assuming the ranger is competently trained, and I expect that her testimony will reveal that she is, she can testify to

2

her observations to include the results in her mind of the field sobriety tests certainly as they contributed to her decision to take Mr. Nguyen into custody.

So in the main, the motions are denied.  However, I will not base any decision in this case – any verdict in this case in substantial part on the test results from the field, that is to say, the breath test results from the field.  I will find out what Mr. Vargas has to say about the accuracy of the machine, both the portable machine and the fixed machine.

Reporter's Transcript of March 14, 2007 (hereinafter "RT") at 5:11-24.

When asked to clarify its ruling on the field sobriety tests, and in particular whether testimony regarding "clues," "pass," "fail," and similar terms would be allowed, the Magistrate Court replied: "That is correct.  I am permitting . . . the ranger to testify to what tests were performed, the manner in which they were performed, and the conclusions she drew from the way the tests were performed." Id. at 6:17-24.

A bench trial followed the motions in limine hearing.  The government first called the arresting officer, Ranger Kathleen Kowalewski.[1]  Ranger Kowalewski testified that, on July 3, 2006, at approximately 1:30 p.m., she was on patrol in Yosemite National Park in a marked vehicle.  See RT at 15.  She was driving her patrol vehicle at under 35 m.p.h. when she was passed by Nguyen's minivan.  RT at 18.  The posted speed limit is 35 m.p.h. and Nguyen's minivan appeared to be traveling at a high rate of speed.  Id. at 17-18.  This attracted Kowalewski's attention because Nguyen passed a marked patrol vehicle in excess of the posted speed limit and the conditions that day were very congested.  Id. at 18.  Kowalewski drove behind Nguyen and determined that he was averaging between 45 and 48 m.p.h.  Id. Kowalewski also observed that, under very congested conditions, Nguyen crossed over the white-dashed line without signaling[2] and passed bicyclists "at a very close proximity" without allowing a safe distance.  Id. at 19.  Kowalewski turned on her lights and sounded her air horn

[1]At the time of the arrest, the ranger's last name was Kowalewski.  At the time of trial, the ranger's name was Paiva.  Ranger Kathleen Paiva is married to Ranger George Paiva, who also gave testimony at Nguyen's trial. For clarity's sake, the Court will use the name Kowalewski and references to Ranger Paiva refer to George Paiva.

[2]However, Kowalewski later testified that the reason Nguyen crossed the white line appeared to be that he was avoiding partially parked vehicles that were obstructing the road.  See RT at 54.

1    several times, but Nguyen did not seem to react to either the lights or the air horn.  Id. at 21-22.

2        Kowalewski then activated her siren, and Nguyen reacted by pulling over.  Id. at 22.

3    There was no room to pull completely off the road, so Nguyen was partially off the road, but

4    mostly still on the road.  Id.  Kowalewski approached and told Nguyen to pull into the Swinging

5    Bridge parking lot, which apparently was in view, and Kowalewski stopped traffic so that

6    Nguyen could safely get back on the road.  Id.  At the parking lot, Kowalewski asked for

7    Nguyen's license, registration and insurance.  Id. at 24.  As Nguyen was getting those documents,

8    Kowalewski could smell a strong odor of alcohol coming from his person.  Id.  Kowalewski also

9    observed that Nguyen's eyes were watery and bloodshot.  Id.  When asked how much he had

10   consumed that day, Nguyen responded that he had one beer that morning, "a couple of beers" the

11   previous night, and stated that "a couple" was actually four beers.  Id. at 24-25.

12       Kowalewski had Nguyen get out of, and then behind, his vehicle.  Id. at 26.  Kowalewski

13   asked Nguyen if he had any medical conditions that she should be aware of and Nguyen did not

14   claim any injuries, conditions, or illnesses.  Id. at 26, 28.  Kowalewski then administered field

15   sobriety tests.  Id. at 28.  At the time the tests were administered, it was a sunny and clear day and

16   the ground was asphalt, level, and smooth.  Id.  Kowalewski explained each test and asked

17   Nguyen if he understood the instructions.  Id. at 33.  Kowalewski testified that she administered

18   the field sobriety tests in conformity with the custom and norms for the practice.  Id. at 79.

19       The first test administered was the Horizontal Gaze Nystagmus ("HGN") test.  Id. at 28.

20   When administering the HGN test, Kowalewski has the subject stand with his feet together, arms

21   to his side, and head still.  Id. at 29.  Kowalewski then takes a pen and moves it back and forth

22   (from left to right) at approximately 12 inches away from the subject's head and parallel to his

23   eyes.  Id.  Kowalewski performed the HGN test and observed a lack of smooth pursuit in both

24   eyes and onset of nystagmus prior to 45 degrees in each eye.  Id. at 30.  Kowalewski testified that

25   nystagmus can be caused by alcohol and that she observed six clues exhibited by Nguyen.[3]  Id.

26   Kowalewski did not expressly identify what each clue was.  See id.  Kowalewski testified that,

27   _____

28       [3]On cross-examination, Kowalewski stated that she did not know what else could cause nystagmus, but that
     nystagmus could occur naturally without any influence of alcohol.  RT at 67-68.

4

based on her training and experience, she would expect to see four or more indicators or clues in an impaired individual under the HGN test.  Id.

Kowalewski then administered the One Leg Stand ("OLS") test.  Id. at 32.  In administering the OLS test, Kowalewski has a subject stand with his feet together and arms down at his side, then raise a leg of his choice approximately six inches off the ground with his toes pointed, has the subject look at his toes, and then has him count out loud (one thousand one, one thousand two, etc.) until she tells him to stop.  Id. at 32-33.  Kowalewski explained that she looks for swaying, putting the foot down, or waving arms.  Id.  at 33.  Kowalewski administered the OLS to Nguyen and he raised both arms more than six inches.  Id.  Kowalewski told him to put his arms back down, and Nguyen then stopped counting.  Id.  Kowalewski then instructed him to keep counting and Nguyen then continued to count and was able to perform the test without further problems.  Id.

Kowalewski then administered the Walk and Turn ("WAT") test.  Id.  In administering the WAT test, Kowalewski has the subject stand with his left foot on a line, tells him to put his right foot in front of his left foot heel to toe, stand with his arms down at his side, walk nine steps heel to toe while counting the steps out loud, pivot on the left foot on step nine, and then walk back the nine steps heel to toe while counting.  Id. at 34.  Kowalewski also demonstrates the test to the subject.  Id.  Kowalewski administered the WAT to Nguyen.  Id. at 36.  Nguyen walked heel to toe on the first, second, and fourth steps, stopped on the seventh step to ask what number he was on, and was not counting out loud.  Id.  Kowalewski told him to continue, so Nguyen started counting at four and continued to about the eleventh step, again not touching heel to toe, when he reached a parked car that was not part of the area for the test, and then turned around using several little steps instead of pivoting on one foot.  Id.  Nguyen then walked back seven steps, again not touching heel to toe, and did not complete the test.  Id.  Kowalewski testified that in the training she had received, a minimum of two indicators would show impairment.  Id. at 36-37.

Finally, Kowalewski had Nguyen blow into a portable breathalyzer.  Id. at 37.  Nguyen

blew a .093.[4]  Id. at 40.  Kowalewski then explained to Nguyen that she believed he was driving

under the influence of alcohol and was a danger to himself and others and then placed him under

arrest.  Id. at 41.  Kowalewski testified that she based her decision to arrest Nguyen on his

driving behavior, her observations upon approaching the vehicle, and the outcome of the field

sobriety tests.  Id. at 41, 79.

Additionally, Ranger Kowalewski described her background, training, and experience

with respect to field sobriety tests.  Kowalewski had received training in determining if someone

was driving under the influence of alcohol during her seven and a half week seasonal academy in

1997, during her four month federal law enforcement training in the Spring of 2001, during

continuing training in Yosemite National Park, during a 16-hour course (which included a wet

lab) in Yosemite in 2005 that was taught by a California Highway Patrol certified instructor, and

actual field experience in which she investigated approximately 30 alcohol related traffic stops.

Id. at 11-12, 14-15.  Kowalewski was trained in administering the three standard field sobriety

tests: HGN, OLS, and WAT.  Id. at 13.  Based on her training, Kowalewski is considered

qualified to carry out field sobriety tests under Yosemite Park standards.  Id. at 13.   Although she

could not recall the specific source of her information, Kowalewski testified that she was

instructed to note the performance of an individual as follows:

> Well, there's certain – we call them clues, where it will – with each . . . test, and
> that will indicate if you meet certain – if there is certain of those clues present,
> you indicate – if you reach so many of them in there, that would indicate a level of
> . . . if you reach that or exceed that number of clues, then that would show a level
> of impairment.
> . . . . . . .[5]
>
> It's not necessary – I mean, you don't have to go just by these clues, but any
> impairment on any of the field sobriety tests is going to show – or let me say that
> correctly.  You don't have to have these clues.  These clues don't – alone, you
> don't have to number them just to show there is impairment, it's you know, you
> overall observation.  The clues [are] just one more way of evaluating it.

Id. at 31-32.

---

[4]The Magistrate Judge admitted this evidence for the limited purpose of explaining why Kowalewski took
Nguyen into custody.  RT at 6.  The Magistrate Judge specifically stated that the verdict would not be based in
substantial part on the results of the portable breathalizer.  Id. at 5.  In light of the Magistrate Judge's ruling, the
Court will not consider the results of the portable breath test in evaluating the sufficiency of the evidence.

[5]Omitted is a question concerning custom and practice in law enforcement.  RT at 32.

Ranger Michener, who had arrived after the initial stop, transported Nguyen to the Yosemite holding facility. Id. at 42. At the holding facility, Ranger Paiva conducted two breathalyzer tests. Id. at 93. Paiva testified that the results of the two test were .08 and .07, respectively. Id. at 94-95. The two tests were taken approximately 3 minutes apart at 2:50 p.m. and 2:53 p.m. Id. at 95. Paiva remembered that Nguyen had been wearing blue and white floral patterned shorts with no shirt and smelled of alcohol. Id. at 91, 96.

After Paiva testified, Edwin Vargas, an expert forensic toxicologist, testified. Vargas testified that everyone is too impaired to drive with a blood alcohol level of .08 and that almost everyone is too impaired to drive with a blood alcohol level of .07. Id. at 114. Vargas estimated that, at the time of the stop, Nguyen's blood alcohol level was between .10 and .11. Id. at 121. However, Vargas testified that his estimation relied on numerous assumptions. Id. at 115, 126, 131-35.

Nguyen's two sons testified for the defense. The sons essentially testified that Nguyen did not weave, did not have slurred speech, and was not driving dangerously. Additionally, a videotape that was made by Anthony Nguyen was played. The video stops some time before the stop occurred. The video is relatively short, but does not depict Nguyen driving in an erratic manner, exhibiting slurred speech, changing demeanor, or changing cognitive behavior.

After hearing the evidence, the Magistrate Judge found Nguyen guilty of unsafe driving and driving under the influence of alcohol to a degree that rendered Nguyen incapable of safe operation. The Magistrate Judge believed that the speeding violation was subsumed by the unsafe operation charge and believed that there were too many variables to find Nguyen guilty of driving with a blood alcohol level of .08 or greater. Nguyen appeals only his conviction for driving under the influence and does not challenge his conviction for unsafe operation of a motor vehicle.

## **NGUYEN'S APPEAL**

### *Appellant's Argument*

Nguyen argues that the Magistrate Court made evidentiary errors and that the evidence was insufficient to convict. Nguyen argues that the HGN test is a scientific test and that any

testimony concerning the HGN test needs to pass Rule 702/*Daubert*.  The government did not present any evidence concerning publications and peer review, known error rates, general acceptance, or whether the techniques can be tested.  It was the government's burden to establish reliability under Rule 702/*Daubert* of the HGN test, and they failed to do so.  It was therefore error to allow and consider Kowalewski's testimony on Nguyen HGN test results.

Similarly, although Kowalewski could give lay testimony about the WAT and OLS under Rule 701, by using the terms "test" and "clues," her testimony became based on specialized knowledge and therefore Rule 702/*Daubert* had to be satisfied.  Like the HGN test, the government did not introduce any evidence concerning the *Daubert* factors.  It was therefore error to allow Kowalewski to testify using the terms "test" and "clues."

Without the evidence of Nguyen's performance on the field sobriety tests, there is insufficient evidence of impairment to support the conviction.  It is not enough that Nguyen had drunk alcohol and was driving a car.  Instead, the evidence needed to show that Nguyen was under the influence of alcohol to a degree that rendered him unsafe to drive.  The evidence of alcohol impairment relied upon by the government, as shown during closing argument, was Nguyen's performance on the field sobriety tests.  If the field sobriety tests are not considered, the evidence is insufficient to support the conviction.

*Appellee's Response*

The government argues that the Magistrate Judge limited the admissibility of the field sobriety tests for the purpose of establishing why Ranger Kowalewski took Nguyen into custody.

The government also argues that the Magistrate Court did not err.  Nearly all state courts agree that, if administered properly, field sobriety tests are admissible and generally accepted.  As to HGN, other courts have determined that it is beyond dispute that there is a sufficient factual basis to support the causal connection between observable exaggerated nystagmus and alcohol ingestion.  Other courts have also held that HGN testing is sufficiently reliable and accepted in the relevant scientific community.  In fact, one federal court has held that the connection between alcohol consumption and nystagmus can be judicially noticed.  Thus, it was unnecessary for the government to do more before introducing the results of the HGN tests.

1    As for the use of terms such as "clue, pass, fail, and test," this was a bench trial and in

2    bench trials, the judge is not so easily swayed by such descriptive words.  Further, the clues

3    which the officer detects are relevant to determining impairment.  Thus, such testimony was

4    properly allowed.

5    Further, even if the Magistrate Court erred, the error was harmless. The results of the

6    breathalyzer administered by Ranger Paiva showed that Nguyen was under the influence of

7    alcohol.  The observations of Nguyen's driving by Ranger Kowalewski and the breathalyzer test

8    administered by Ranger Paiva are sufficient to support the conviction.

9

10                                       **LEGAL STANDARD**

11    The sufficiency of the evidence to support a conviction following a bench trial is

12    reviewed de novo.  United States v. Jiang, 476 F.3d 1026, 1029 (9th Cir. 2007).  The standard for

13    reviewing the sufficiency of the evidence to support a criminal conviction is whether, "viewing

14    the evidence in the light most favorable to the prosecution, any rational trier of fact could have

15    found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443

16    U.S. 307, 319 (1979); United States v. Bucher, 375 F.3d 929, 934 (9th Cir. 2004).  This test

17    applies to both jury and bench trials.  United States v. Randolph, 93 F.3d 656, 660 (9th Cir.

18    1996).  All reasonable inferences that may be drawn from the evidence are to be drawn in the

19    government's favor.  United States v. Heuer, 4 F.3d 723, 731 (9th Cir. 1993); United States v.

20    Reese, 775 F.2d 1066, 1071 (9th Cir. 1985).  The reviewing court is required to "respect the

21    exclusive province of the fact-finder to determine the credibility of the witnesses, resolve

22    evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the

23    fact-finder resolved all such matters in a manner which supports the verdict."  United States v.

24    Khatami, 280 F.3d 907, 910 (9th Cir. 2002); United States v. Hubbard, 96 F.3d 1223, 1226 (9th

25    Cir. 1996).  In bench trials, "the judge weighs the evidence, determines the credibility of the

26    witnesses, and finds the facts."  United States v. Bales, 813 F.2d 1289, 1293 (4th Cir. 1987); see

27    United States v. Stanton, 501 F.3d 1093, 1100-01 (9th Cir. 2007).  "The court may select among

28    conflicting inferences to be drawn from the testimony."  Bales, 813 F.2d at 1293; see Stanton,

1  501 F.3d at 1100-01; United States v. Jennings, 726 F.2d 189, 190 (5th Cir. 1984); see also

2  Khatami, 280 F.3d at 910.

3      A trial court's decision to admit or exclude evidence is generally reviewed for an abuse of

4  discretion.  United States v. Decoud, 456 F.3d 996, 1010 (9th Cir. 2006).  Under the abuse of

5  discretion standard, an erroneous evidentiary ruling will require reversal unless it is more likely

6  than not that the evidentiary ruling did not affect the verdict.  Id.; United States v. Pang, 363 F.3d

7  1187, 1192 (9th Cir. 2004).  An evidentiary ruling may be affirmed on any ground supported by

8  the record, "regardless of whether the district court relied on the same grounds or reasoning [the

9  appellate court] adopts."  Pang, 362 F.3d at 1192.

10     Rule of Evidence 702 permits a witness to give expert testimony if "(1) the testimony is

11  based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

12  methods, and (3) the witness has applied the principles and methods reliably to the facts of the

13  case."   Fed.R.Evid. 702..  See Fed. R. Evid. 702.  The trial court must ensure that expert

14  testimony is both relevant and reliable, which requires consideration of whether:  (1) the

15  reasoning or methodology underlying the testimony is scientifically valid (the reliability prong);

16  and (2) whether that reasoning or methodology properly can be applied to the facts in issue (the

17  relevancy prong).  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-93 (1993).  In

18  determining reliability, a court may consider a number of factors including: (1) whether the

19  theory can be and has been tested; (2) whether it has been subjected to peer review; (3) the

20  known or potential rate of error; and (4) whether the theory or methodology employed is

21  generally accepted in the relevant scientific community.  Id. at 593- 94.  However, "Daubert's

22  list of specific factors neither necessarily nor exclusively applies to all experts or in every case."

23  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999).  In other words, the Daubert inquiry is

24  "flexible" and the four factors are "meant to be helpful, not definitive."  Id. at 151.  Without this

25  flexibility, "the trial judge would lack the discretionary authority needed to avoid unnecessary

26  'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly

27  taken for granted, and to require appropriate proceedings in the less usual or more complex cases

28  where cause for questioning the expert's reliability arises."  Id. at 152.

1

**DISCUSSION**

2

*Evidentiary Rulings*

3       The Magistrate Judge's ruling on the portable breath test is not at issue, but his rulings on

4 the field sobriety tests are.  As an initial matter, the Court cannot agree with the government that

5 the Magistrate Judge narrowly limited his consideration of the field sobriety tests for the purpose

6 of showing why Kowalewski arrested Nguyen.  The portion of the record cited by the

7 government (page 4 of the transcript) in context is referring to the results of the portable breath

8 test.  See RT at 3:4-4:21.  Further, the portion of the record quoted by the government on page 5

9 indicates that the Magistrate Judge would allow Kowalewski to testify about the results of the

10 sobriety tests, which could include the results in her mind as they contributed to her decision to

11 take Nguyen into custody.  See id. at 5:10-18.  Although at page 5 the Magistrate Judge did not

12 use the phrase "could include," it is apparent that "could include" is what was intended when the

13 Magistrate Judge clarified, "I am permitting the ranger to testify to what tests were performed,

14 the manner in which they were performed, and the conclusions she drew from the way the tests

15 were performed."  Id. at 6:22-24.  The Court does not believe that the Magistrate Judge limited

16 his consideration of the field sobriety tests to the degree argued by the government.

17       With respect to the individual field sobriety tests, Nguyen argued that the HGN was a

18 scientific test and that Rule 702 had to be met, that the OLS and WAT were observational tests

19 that would be permissible under Rule 701, but that the use of terms such as "tests," "pass," "fail,"

20 and "clues" would bring the OLS and WAT out of the realm of Rule 701 and into Rule 702.

21       1.       OLS and WAT

22       Law enforcement officers regularly use field sobriety tests to examine impairment when

23 they suspect an individual of driving under the influence of alcohol.  E.g., Volk v. United States,

24 57 F.Supp.2d 888, 895 (N.D. Cal. 1999).  "Because intoxicated driving offenses are generally

25 state offenses that are tried only in federal courts under the Assimilative Crimes Act, 18 U.S.C. §

26 13, federal case law on the admissibility of [field sobriety tests] is sparse."  United States v. Van

27 Hazel, 468 F.Supp.2d 792, 796 (W.D. N.C. 2006).

28       There is general agreement that tests such as the OLS and WAT are psychomotor tests

11

that obtain their legitimacy from the known effects of intoxication based on propositions of

common knowledge.  See United States v. Horn, 185 F.Supp.2d 530, 558 (D. Md. 2002);

Williams v. State, 710 So.2d 24, 30 n.10 (Fla. App. 1998); State v. O'Key, 899 P.2d 663, 675

(Or. 1995).  The rationale behind the psychomotor field sobriety tests has been described as

follows:

> Psychomotor [field sobriety tests] test balance and divided attention, or the ability
> to perform multiple tasks simultaneously. While balancing is not necessarily a
> factor in driving, the lack of balance is an indicator that there may be other
> problems. Poor divided attention skills relate directly to a driver's exercise of
> judgment and ability to respond to the numerous stimuli presented during driving.
> The tests involving coordination (including the walk-and-turn and the one-leg-
> stand) are probative of the ability to drive, as they examine control over the
> subject's own movements. Because evidence procured by administration of
> psychomotor [field sobriety tests] is within the common experience of the
> ordinary citizen, the majority of courts that have addressed the issue generally
> consider psychomotor [field sobriety tests] to be nonscientific evidence.

Horn, 185 F.Supp.2d at 558; State v. Dilliner, 569 S.E.2d 211, 224 n. 8 (W. Va. 2002); State v.

Ferrer, 23 P.3d 744, 760-62 (Haw. App. 2001); see also Hawkins v. State, 476 S.E.2d 803, 807

(Ga. App. 1996); Crampton v. State, 525 A.2d 1087, 1093-94 (Md. App. 1987).  Because

psychomotor field sobriety tests are considered non-scientific or non-technical in nature, a

description of the test and a defendant's performance on the test may generally be admitted into

evidence as lay opinion testimony under Rule 701, without the need for expert testimony.  See

Horn, 185 F.Supp.2d at 559; State v. Plouff, 192 S.W.3d 213, 223-24 (Tex. App.– Houston [14th

Dist.] 2006); State v. Schmitt, 801 N.E.2d 446, 450  (Ohio 2004); see also United States v.

Daras, 1998 U.S. App. LEXIS 26552, *7-*8 (4th Cir. 1998) (noting that no expert scientific

testimony is necessary to testify regarding psychomotor field sobriety tests);[6] cf. United States v.

Mastberg, 503 F.2d 465, 470 (9th Cir. 1974) (noting that the modern view allows a witness to

give a lay opinion that someone is intoxicated).  Such evidence may be used as circumstantial

evidence of alcohol impairment.  See Horn, 185 F.Supp.2d at 533.

    As applied to this case, there was no need for the government to satisfy Rule 702/*Daubert*

before Kowalewski could testify about Nguyen's performance on the OLS and WAT because the

---

[6]The Fourth Circuit Local Rules discourage citation to unpublished opinions (dated prior to January 1,
2007) to courts within the Fourth Circuit unless the unpublished case has precedential value in relation to a material
issue and there is no published opinion that would serve as well.  Fourth Circuit Local Rule 32.1.

testimony was admissible under Rule 701.[7]  Kowalewski's testimony was based on her own,

personal, contemporaneous observations of Nguyen, see United States v. Durham, 464 F.3d 976,

982 (9th Cir. 2006); Schmitt, 801 N.E.2d at 450, the testimony was "helpful" to the Magistrate

Judge in determining whether Nguyen was impaired or intoxicated, see Mastberg, 503 F.2d at

470; Schmitt, 801 N.E.2d at 450 , and as psychomotor tests that rest on common knowledge of

the effects of alcohol on a person, see Horn, 185 F.Supp.2d at 558; Plouff, 192 S.W.3d at 223-24,

testimony concerning the performance on the WAT and the OLS "results from a process of

reasoning familiar in everyday life."  United States v. White, 492 F.3d 380, 401 (6th Cir. 2007);

United States v. Rigas, 490 F.3d 208, 224 (2d Cir. 2007); Advisory Committee Notes to 2000

Amendment to Rule 701.  Further, Kowalewski's testimony shows that the OLS and the WAT

were administered correctly and in the usual and customary fashion.  Cf. RT at 32-34, 79 with

Horn, 185 F.Supp.2d at 537-38; Plouff, 192 S.W.3d at 222-24; Court's Docket Doc. No. 18-3 at

p. 2 (Nguyen's Motion in Limine); see also Schmitt, 801 N.E.2d at 450.  As discussed above,

Kowalewski described the OLS and WAT, her instructions to Nguyen, his performance on the

OLS and WAT, and later testified that she believed that Nguyen was impaired based on the

totality of the circumstances, which included his performance on the OLS and WAT.  See RT at

15, 32-37, 41, 79.  Such testimony was admissible under Rule of Evidence 701 as lay opinion

and the Magistrate Judge did not err in its admission.[8]  See Fed. R. Evid. 701; White, 492 F.3d at

401; Durham, 464 F.3d at 982; Mastberg, 503 F.2d at 470; Horn, 185 F.Supp.2d at 558; Plouff,

192 S.W.3d at 223-24; Schmitt, 801 N.E.2d at 850; Dilliner, 569 S.E.2d at 224 n. 8; Ferrer, 23

P.3d at 760-62, 764.

 Nguyen's motion in limine also sought to prohibit Kowalewski from using terms such as

"test," "pass," "fail," and "standardized clues," unless the WAT and OLS were shown to be

---

[7]Federal Rule of Evidence 701 reads:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

[8]In Stanton, the Ninth Circuit relied, in part, on the results of the WAT and OLS tests to uphold a conviction for driving while intoxicated.  See Stanton, 501 F.3d at 1100.  However, it does not appear that Stanton challenged the admissibility of those test results on appeal.

reliable under Rule 702.  Nguyen has accurately cited cases that support his argument.  Horn, 185

F.Supp.2d at 589; Ferrer, 23 P.3d at 762; State v. Meador, 674 So.2d 826, 832 (Fla. App. 1996).

However, there are two things to keep in mind with respect to Kowalewski's use of these terms.

First, the cases that prohibit the use of terms such as "test" or "fail" or "clue" express a concern

that such terms unduly influence a jury by giving the testimony the "aura of scientific validity."

Horn, 185 F.Supp.2d at 559; Ferrer, 23 P.3d at 764-65; Meador, 674 So.2d at 832.  This case was

a bench trial.  While it is still possible for a Rule 403 type of error to unduly influence a judge,

"[n]onjury trials present a much smaller danger of unfair prejudice than jury trials."  Carter v.

Hewitt, 617 F.2d 961, 972 n.13 (3d Cir. 1980); see Kenneda v. United States, 815 F. Supp. 926,

936 (S.D. W. Va. 1993); cf. Crowe v. Smith, 151 F.3d 217, 234 (5th Cir. 1998) (noting risk of

undue confusion or prejudice from having counsel testify as a witness not present in bench

trials); Volk, 57 F.Supp.2d at 896 n.5 (noting that a court's *Daubert* gatekeeping function "is less

pressing in connection with a bench trial").  Second, the Court has reviewed the transcript of

Kowalewski's testimony and it does not appear that she ever used the terms "pass" or "fail."

Also, when describing the OLS, Kowalewski did not use the term "clue" or "indicator."  What is

at issue, therefore, is her use of the term "test" for both the OLS and the WAT and her use of the

term "clue" for the WAT.

     With respect to use of the terms "test" and "clues," the Court does not believe that using

these terms either unduly influences a trier of fact or converts lay testimony into expert

testimony.  See United States v. Winkle, 2002 U.S. Dist. LEXIS 23643, *6-*7 (D. Kan. 2002);

Plouff, 192 S.W.3d at 224; State v. Kelley, 896 A.2d 129, 135 (Conn. App. 2006); McRae v.

State, 152 S.W.3d 739, 746 (Tex. App.–Houston [1st Dist.] 2004).  In the typical case in which

an officer describes a psychomotor test like the OLS and WAT, words like "clues" or "points" or

"indicators" simply "refer to observations by the peace officer, based on common knowledge

observations of the [psychomotor test] . . ."  McRae, 152 S.W.2d at 746.  For example, after

Kowalewski described Nguyen's performance on the WAT, she was asked how many indicators

were present.  See RT at 36.  Kowalewski responded, "There's the – I believe the counting out

loud, not touching heel to toe, and proper turn . . ."  Id.  Thus, the "indicators" or "clues"

identified by Kowalewski with respect to the WAT all deal with whether Nguyen performed the WAT as instructed.  Identifying the instances when balance or coordination appear to be abnormal, or identifying the instances where the instructions are not followed, are what a lay person would look to naturally, based on common knowledge and experience, to see if there is impairment.  Calling those instances "clues" or "indicators" does not make the testimony scientific, inadmissible, or unfairly prejudicial.   "In this context, the language is nothing more than descriptive . . . ."[9]  Kelley, 896 A.2d at 135.

With respect to the term "test," the *Horn* Court suggested using the word "procedure" instead of "test."[10]  Horn, 185 F.Supp.2d at 559 n.48.  However, another court has observed that the term "test" is "commonly used by the average person to describe unscientific topics."  Kelley, 896 A.2d at 135.  The *Horn* Court also recognized that the phrase "field sobriety test" has been used for so many years that is likely impossible to stop using such terminology altogether.[11]  Horn, 185 F.Supp.2d at 559 n.48.  It seems to this Court that the phrase "field sobriety *test*" has been used for so many years that is generally well known and accepted.  Given that psychomotor tests are based on the common knowledge of the effects of alcohol on a person, the risk of undue prejudice is not sufficiently substantial to prohibit the use of the term "test," at least in the context of a bench trial.

The Magistrate Judge did not abuse his discretion by permitting Kowalewski to testify about the OLS and the WAT by using the terms "test," "clues," and "indicators."  See Winkle, 2002 U.S. Dist. LEXIS 23643 at *6-*7; Plouff, 192 S.W.3d at 224; Kelley, 896 A.2d at 135; McRae, 152 S.W.3d at 746.

2.      HGN

Nystagmus is a "jerkiness of eye movement."  United States v. Apeland, 2007 U.S. Lexis

---

[9]Further, any potential for unfair prejudice was further lessened when Kowalewski testified, "These clues don't – alone, you don't have to number them just to show that there is impairment, it's you know, your overall observation.  The clues is just one more way of evaluating it."  RT at 32.

[10]The Court sees no harm in mandating the use of terms such as "procedures" or "exercises" in the context of a jury trial.

[11]*Horn* also noted that occasional use of the term "test" would not be grounds for a mistrial.  Horn, 185 F.Supp.2d at 559 n.48.

1   15666, *3 n.1 (9th Cir. 2007); United States v. Van Griffin, 874 F.2d 634, 636 (9th Cir. 1989).

2   More particularly, nystagmus is "an involuntary rapid eye movement of the eyeball, which may

3   be horizontal, vertical, or rotary.  An inability of the eyes to maintain visual fixation as they are

4   turned from side to side (in other words, jerking or bouncing) is known as horizontal gaze

5   nystagmus." Van Hazel, 468 F.Supp.2d at 797.  The HGN test relies on the scientific principle

6   that alcohol will cause a type of nystagmus, which in turn can be detected by a properly trained

7   officer.  See Hulse v. State, 961 P.2d 75, 94 (Mont. 1998); People v. Leahy, 8 Cal.4th 587, 607

8   (1994).

9         In contrast to the psychomotor field sobriety tests, it appears that a majority of

10  jurisdictions view the HGN test as being scientific in nature and not within the common

11  understanding of lay persons.  See Van Hazel, 468 F.Supp.2d at 796; but see State v. Boczar, 863

12  N.E.2d 155, 160 (Ohio 2007).  In California, HGN tests are considered scientific in nature.

13  Leahy, 8 Cal.4th at 607.[12]  However, because a published California appellate decision has held

14  that HGN testing is generally accepted in the relevant scientific community, see People v.

15  Joehnk, 35 Cal.App.4th 1408, 1508-09 (1995), no scientific expert testimony is required and a

16  police officer may report the results of an HGN test provided that a foundation is laid that the test

17  was administered properly and that the officer is qualified, i.e. has the requisite training and

18  experience to administer the test.  See Leahy, 8 Cal.4th at 611.  It does not appear that the Ninth

19  Circuit has addressed the admissibility of the HGN test.

20        Two lower federal courts have addressed the admissibility of HGN tests, post-*Kumho

21  Tire*.  In *Horn,* after a detailed analysis of case law from the states, as well as various studies and

22  scholarly opinion, it was held that the HGN test is scientific or technical in nature and that the

23  results of a properly administered HGN test is admissible as circumstantial evidence of

24  impairment.  Horn, 185 F.Supp.2d at 555 & n.43, 560-61.  *Horn* held that if the arresting officer

25  is the sponsor of such evidence, the officer's foundational testimony should be limited to

26  experience and training in administering the HGN test.  See id. at 561.  If that foundation is met,

27  then the officer is limited to testifying about his administration of the test and whether

28
      _____

      [12]California is a *Frye* jurisdiction and does not follow *Daubert*.  Leahy, 8 Cal. 4th at 604.

exaggerated nystagmus was detected.  See id.  Unless the officer is qualified as an expert under

Rule 702/*Daubert*, the *Horn* Court prohibited any opinion testimony by the officer as to the

reliability of the methods and principles underlying the HGN test, the accuracy of the HGN test,

and the causal nexus between exaggerated nystagmus.  See id.

In *Van Hazel*, the District Court stated its agreement with the state courts that had held

that the HGN test is a scientific test.  See Van Hazel, 468 F.Supp.2d at 797.  That court declined

to take judicial notice of either the connection between alcohol ingestion and nystagmus or the

reliability of HGN testing.  See id.  The *Van Hazel* court also noted that experts have differing

opinions as to the reliability of the HGN test.  See id.  Because the administering officer did not

have the required qualifications, he could not testify as to the reliability of the HGN test.  See id.

Although it did not deal specifically with an HGN test, the *Volk* decision is instructive.  In

*Volk*, the results of an HGN test were never admitted, but the results of other field sobriety tests

were.  See Volk, 57 F.Supp.2d at 891.  On appeal to the district court, it was argued that the

magistrate court had erred by not holding a formal *Daubert* hearing.  See id.  The *Volk* court

noted that the magistrate court had found the officer's testimony reliable based on the officer's

experience and training, and also observed that *Kumho Tire* had made clear that courts have

broad discretion in determining whether expert evidence is reliable under Rule 702.  See id. at

891, 895.  The *Volk* court found no abuse of discretion by the magistrate court and explained:

> Although the court declined to hold an evidentiary hearing or formally apply the
> *Daubert* factors, the record reflects an adequate consideration of the reliability of
> the testimony before admitting it.  In essence, the court found that the testimony
> by a police officer who has specialized knowledge and experience with regard to
> intoxication and the nature of field sobriety testing was sufficiently reliable that
> no further analysis was required.

Id.; see also United States v. McGavock, 2005 U.S. Dist. LEXIS 24615, *13 (W.D. Va. 2005)

(holding that "the officers testified as to their training in conducting field sobriety tests, and that

the tests performed on the defendant [including the HGN] were in accordance with standard

procedures and their training.  The reliability of these tests as administered in this case therefore

was established.").

This Court agrees that an HGN test is not based on common knowledge and

understanding of the effects of alcohol on a person.  Instead, the HGN test is based on a scientific

1  principle that is not commonly known, i.e. that consumption of alcohol is a cause of exaggerated

2  nystagmus.  To administer the test and recognize the presence of exaggerated nystagmus requires

3  specialized training and knowledge.  Because of the scientific foundation and specialized

4  knowledge and training necessary to detect nystagmus, Rule 702 applies and any testimony about

5  an HGN test and the results thereof must be reliable.  See Fed. R. Evid. 702.  However, as

6  Kumho Tire made clear, a court has great flexibility in determining reliability so as to deal with

7  "cases where the reliability of an expert's methods is properly taken for granted."  Kumho Tire,

8  526 U.S. at 152.

9         Depending on the extent of an officer's testimony, an HGN test falls into the category of

10  cases where reliability of methodology may be taken for granted.  See Kumho Tire, 526 U.S. at

11  152.  Published cases from across the country make clear that the method for determining the

12  presence of exaggerated nystagmus is not complex and such evidence is routinely introduced in

13  trials, under either Frye or Daubert based state rules of evidence.  See, e.g., Plouff, 192 S.W.3d

14  at 219-22; State v. Taylor, 880 So.2d 197, 199-200 (La. App. 2004); Joehnk, 35 Cal.App.4th at

15  1508-09; State v. Balbi, 874 A.2d 288, 294-95 (Conn. App. 2005); State v. Ito, 978 P.2d 191,

16  199-200 (Haw. App. 1999) (numerous cases cited therein).  It is also well established that alcohol

17  can cause exaggerated nystagmus.  E.g., Horn, 185 F.Supp.2d at 555; Ballard v. State, 955 P.2d

18  931, 938 (Alaska App. 1998); State v. Superior Court, 718 P.2d 171, 181 (Ariz. 1986); Leahy, 8

19  Cal.4th at 607; Balbi, 874 A.2d at 294-95; State v. Ruthardt, 680 A.2d 349, 357 (Del. Super. Ct.

20  1996); Meador, 674 So.2d at 835; Polizzotto v. State, 547 S.E.2d 390, 394 (Ga. App. 2001); Ito,

21  978 P.2d at 196-97; State v. Garrett, 811 P.2d 488, 491 (Idaho 1991); People v. Kirk, 681 N.E.2d

22  1073, 1075 (Ill. App. 1997); State v. Witte, 836 P.2d 1110 (Kan. 1992); Schultz v. State, 664

23  A.2d 60, 69 (Md. App. 1995); Hulse v. State, 961 P.2d 75, 93 (Mt. 1998); State v. Baue, 607

24  N.W.2d 191, 204 (Neb. 2000); State v. Dahood, 814 A.2d 159, 167 (N.H. 2002); State v.

25  Bresson, 554 N.E.2d 1330, 1336 (Ohio 1990); O'Key, 899 P.2d at 687; Emerson v. State, 880

26  S.W.2d 759, 765-66 (Tex. Crim. App. 1994).  Congruently, the Ninth Circuit recently stated that

27  nystagmus "is one indication that a suspect is intoxicated."  Apeland, 2007 U.S. Lexis 15666 at

28  *3 n.1.  Given this agreement, judicial notice may be taken of the fact that alcohol consumption

can cause exaggerated nystagmus.  See Horn, 185 F.Supp.2d at 555.  Since officers routinely apply and rely on the principle that alcohol can cause exaggerated nystagmus, and since judicial notice of this fact is appropriate, the Court sees no reason why a police officer should be prohibited from testifying that alcohol can cause exaggerated nystagmus, so long as he can show that he was taught this fact as part of his training.  But see Horn, 185 F.Supp.2d at 561.  It is true that there are many other things that can cause exaggerated nystagmus.  See Schultz, 664A.2d at 77.  However, these additional causes may form the basis of a request for judicial notice or an effective cross examination.  See Horn, 185 F.Supp.2d at 556 n.45; Balbi, 874 A.2d at 295; Dahood, 814 A.2d at 167; O'Key, 899 P.2d 689 n.46.

Given the above, the Court holds that, if an officer establishes that he has had the requisite training and experience in administering an HGN test and detecting exaggerated nystagmus, and part of that training included the fact that alcohol consumption may cause nystagmus, then the officer may testify about his administration of the HGN test, whether exaggerated nystagmus was detected, and that alcohol consumption can cause exaggerated nystagmus.  See McGavock, 2005 U.S. Dist. LEXIS 24615 at *13; Volk, 57 F.Supp.2d at 895-96; cf. Horn, 185 F.Supp.2d at 560-61.  However, any testimony that is more in depth about exaggerated nystagmus or the HGN test will require a greater showing of reliability under Rule 702.[13]  Cf. Van Hazel, 468 F.Supp.2d at 797; Horn, 185 F.Supp.2d at 560-61.

As applied in this case, Kowalewski testified that she was taught how to administer the HGN as part of her training, that she had performed or seen performed the HGN on many occasions in the field, that the test was performed in the normal and customary manner, that her training included the fact that alcohol may cause exaggerated nystagmus, and that a person can have exaggerated nystagmus without having consumed alcohol.  See RT at 13-15, 31, 64-67, 72. Further, Kowalewski's description of her administration of the HGN test is consistent with case law that discuss the National Highway Traffic Safety Authority guidelines for the HGN test.  Cf. RT at 29-30, 73 with People v. McKown, 875 N.E.2d 1029, 1032 (Ill. 2007); Quinney v. State,

---

[13]Slight or insignificant variations in the administration of the HGN test generally goes to the weight of the evidence.  See Plouff, 192 S.W.3d at 219; Ballard, 955 P.2d at 941.

1   99 S.W.3d 853, 857-58 (Tex. App.–Houston [14th Dist.] 2003); Ito, 978 P.2d at 197.  This is a

2   sufficient foundation to allow Kowalewski testify about her administration of the HGN test, the

3   detection of exaggerated nystagmus, and the connection between alcohol consumption and

4   exaggerated nystagmus.[14]  The Magistrate Judge did not err by allowing this testimony.

5

6          *Sufficiency Of The Evidence*

7          36 C.F.R. § 4.23(a)(1) reads: "Operating or being in actual physical control of a motor

8   vehicle is prohibited while . . . under the influence of alcohol, or drugs, or any combination

9   thereof, to a degree that renders the operator incapable of safe operation."  Thus, in order to

10  obtain a conviction under this section, the government must prove beyond a reasonable doubt

11  that the defendant: "(1) was operating a vehicle; (2) while under the influence of alcohol; (3) to a

12  degree that rendered him incapable of safe operation."  United States v. Stanton, 501 F.3d 1093,

13  1099 (9th Cir. 2007).

14         Here, there is no doubt that Nguyen was operating a motor vehicle.  Further, in light of

15  the breathalyzer test conducted by Paiva, Kowalewski and Paiva both smelling alcohol on

16  Nguyen's breath, Nguyen having watery and bloodshot eyes, and Nguyen's admission to

17  Kowalewski that he had drunk beer that morning, the evidence shows that Nguyen was under the

18  influence of alcohol.  See RT at 24-25, 91, 94-95.  Finally, there is sufficient evidence to show

19  impairment, that is, that Nguyen was under the influence of alcohol to a degree that rendered him

20  incapable of safe operation.  Nguyen was driving over the posted speed limit, passed a marked

21  patrol vehicle, was driving too fast for congested conditions, passed bicyclists at an unsafe

22  distance, and did not react promptly to Kowalewski's efforts to stop him.  See RT at 17-22.

23  Further, the results of the field sobriety tests indicate impairment.  Kowalewski observed

24  exaggerated nystagmus after performing the HGN test.  RT at 30.  Nguyen initially raised his

25  arms and did not count out loud when he performed the OLS.  RT at 33.  Nguyen's performance

26  on the WAT appeared excessively erroneous:  he did not count properly and had to ask what

27

28         [14]Kowalewski testified that she observed in each eye a lack of smooth pursuit, nystagmus at maximum
    deviation, and nystagmus onset prior to 45 degrees, see RT at 30; in other words, she detected exaggerated
    nystagmus.  See Horn, 185 F.Supp.2d at 537.

number he was on, did not keep track of his steps, did not consistently walk heel to toe, did not pivot step, and walked to a car that was outside of the testing area.  RT at 36.  Although there is no evidence that Nguyen had consumed alcohol consistently over a significant period as did the defendant in *Stanton*, the above evidence, when viewed in the light most favorable to the government, is sufficient to support Nguyen's conviction for violation of 36 C.F.R. § 4.23(a)(1).[15]  See *Stanton*, 501 F.3d at 1099-1100.  That is, a rational trier of fact could find the essential elements of 36 C.F.R. § 4.23(a)(1) beyond a reasonable doubt.[16]  See *Jackson*, 443 U.S. at 319; *Stanton*, 501 F.3d at 1099-1100.

## **CONCLUSION**

Nguyen challenges his conviction for violation of 36 C.F.R. § 4.23(a)(1) and argues that the Magistrate Judge erroneously admitted evidence concerning field sobriety tests.  However, evidence concerning Nguyen's performance on the OLS and WAT were admissible under Rule 701.  Nguyen's performance on the HGN was admissible because a sufficient foundation under Rule 702 had been laid.  In light of the testimony concerning Nguyen's performance on the field sobriety tests, there was sufficient evidence to support the conviction.

Accordingly, IT IS HEREBY ORDERED that Nguyen's appeal is DENIED and the conviction is AFFIRMED.

IT IS SO ORDERED.

**Dated:     February 25, 2008                        /s/ Anthony W. Ishii**
UNITED STATES DISTRICT JUDGE

---

[15]As the trier of fact, the Magistrate Judge was free to make credibility determinations among witnesses and determine what weight to give the videotape, which is very short and ends some time prior to the traffic stop.  See *Stanton*, 501 F.3d at 1100-01; *Khatami*, 280 F.3d at 910; *Bales*, 813 F.2d at 1293; *Jennings*, 726 F.2d at 190.

[16]The *Horn* court indicated that there was insufficient evidence before it to allow an officer to testify that a certain number of exhibited clues on each of the field sobriety tests equals failure.  See *Horn*, 185 F.Supp.2d at 557.  For example, two clues exhibited on the WAT is a "failed" test.  Here, Kowalewski testified that two clues on the WAT and four clues on the HGN show impairment, but she did not testify as to "failing" the tests.  See RT at 30-37.  Assuming that an insufficient foundation had been laid for this testimony, in light of the evidence outlined above, the admission of the testimony was harmless.  See *Daras*, 1998 U.S. App. LEXIS 26552 at *7-*8; *United States v. Nohara*, 3 F.3d 1239, 1243 (9th Cir. 1993).